By the Court.

We have no doubt of the authority of the super cargo, in the circumstances the property was found to be in, to make the compromise; and a reasonable compromise, so made, is binding on the underwriters, (a)
As to the question of over insurance, we are of opinion, that the plaintiffs have a right to appropriate the several policies so as to cover the property insured, belonging to the respective persons concerned. The defendant’s claim to an allowance on this ground is, therefore, not supported, (b)
*54 The loss, in this case, is to be considered as a partial loss of two thirds of the vessel and cargo, in the adjustment of which no respect is to be had to the high prices at Naples, or the lower comparative value at the original place of destination.

Judgment on the verdict.

ADDITIONAL NOTE.
[See, as to the parties to a policy, Flemming vs. Marine, &c., 4 Whart. 59. — Rider vs. Ocean, &c., 20 Pick. 259. — Robinson vs. Gleadow, 2 Scott., 250.
As to the rights and duties of parties in case of capture, Covering vs. Mercantile &c., 12 Vick. 348.— Maryland, &c., vs. Bathurst, 5 Gill. & J. 159. — F H ]

 [Hughes, 225. — Parks, 109. — 2 Marsh. 503. — Ed.]

 [The facts are not sufficiently reported to raise this question- It does not an *54 pear what was the amount in value of the property insured. The counsel for the olaintiff, however, admitted, as it appears from the report of the argument, that “ if the first policy was to be appropriated according to the respective interests of the assured, the defendant would be discharged.” The rule, adopted by the court in the above case, was probably considered as having been established by a former decision in Lee & Al. vs. The Massachusetts Fire & Marine Insurance Company, (6) Mass. Rep. 217. In delivering the opinion of the Court in this case, Sewall, J., said, The right in the assured to apportion their insurance among themselves puts an end to the questions raised in the case at bar; and that they have this right, when not restricted by any circumstances in their mode of insurance, or any declared intention or previous agreement among themselves, and to the extent requisite to give validity to both contracts, [ can have no doubt; and this even after a loss is known.” The learned judge refers to Kewly vs. Ryan, (2 H. Bl. 347,) as being a case in point. But neither this case, nor Henchman vs. Offey, therein mentioned, nor any other case to be found in the books, maintains any such doctrine. These cases decide only that, in case of divers polic.es on merchandise to be shipped in any “ ship or ships,” the insured, before the risk commences, may apply or appropriate the insurance to merchandise in whatever ship or ships he thinks proper, within the terms of the policy. There is no analogy between these cases and the case before us. If there had been but one policy in this case, namely, the first, wherein insurance liad been made for several persons interested in the merchandise, in case of a loss, each would have been undoubtedly entitled to receive a part of the amount to be recovered of the underwriters, proportion-able to his interest in the property insured. None could claim any greater proportion. This must have been the implied agreement between all the parties at the time when the contract was entered into. On these principles, in the absence of any express agreement to the contrary, an adjustment between the parties must have been made And there is no reason, from any circumstances in the case, to believe that there was really any other understanding between the parties upon this subject. How, then, could the making of the two subsequent policies for the benefit of two of the several persons insured by the first policy, alter the terms of that policy, or enlarge, or diminish, the interest of any of the persons insured thereby? It cannot be denied that, when the first policy was made, these two persons were principally interested therein ? They had done nothing to divest themselves of that interest when the second and third policies were made for their sole benefit. How could they, then, contrary to the fact, be permitted to say, that they had no interest in the first policy ? If their interest was once coyered by the first and second policies, as would seem to have been the case, how could they legally make any claim upon the last underwriter on the third policy ? As it appeared that the first policy, as well as the second, had been paid, the presumption cer'zimly was, that the moneys had been apportioned among the sev eral persons according to their respective interests therein. There was nothing in tire case to rebut this presumption. But of what consequence was it how the parties chose to apply the money, or divide it among themselves ? The real question was, whether the plaintiffs’ interest in the property had not been covered by tiie two first j olicies when the third was made. This depended upon facts which could not be altered by any appropriation of the moneys recovered on those policies. If the plaintiffs chose to give their share to the others, that could not give them any right to claim to that amount against an underwriter on a subsequent policy. — Ed.]